## Case No. 5,222.

### GARDNER v. BIBBINS et al.

[Blatchf. & H. 356.] [1]

District ·Court, S. D. New York. Feb. 5, 1833.

---

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

Henry M. Western, for libellant.
Walter Edwards, for respondents.

BETTS, District Judge. The only instance in which both of the respondents united in committing any of the torts charged in the libel was at Gibraltar. The assault charged in the libel is denied by the answers, and the proofs upon this point are as contradictory as the pleadings. The deposition of Jay, one of the seamen on board the schooner, supports the allegations of the libel in every material particular. He says that he saw two blows given by the mate with the handspike, and saw the libellant stagger under them against the boat, and saw the master fall upon him before he had recovered himself, and flog him severely with a gasket. On the other hand, two other seamen, Clark and Stewart, support the representation of the occurrence which is given by the answers. Clark says, that the libellant replied to the master, on being chided for not knowing his duty, "I know more than you do about reeving studding-sail halyards, and you can't tell me anything about it"; that the master thereupon came forward and gave him two or three blows with the gasket, whereupon the libellant said, that if he struck again he would knock him down; and that the master then continued flogging the libellant till he had given him seven or eight blows. Both of these witnesses say, that the mate did not strike the libellant at the time, and Clark says, that the long-boat was not on deck, but was overboard. It is also to be remarked, that Matthews, another witness for the libellant, does not, in the version he gives of the affray, support Jay or the libel. He was standing by, and, if he did not see the whole affair, the account he gives of what passed in his presence stands in contradiction to the representations of Jay. He says, that after the libellant's answer to the master's reproof, the mate turned around and asked the master if he heard what reply the libellant had given him, and added: "If I was you, I would give him a flogging"; upon which, the master came forward and took a gasket and flogged the libellant; that the mate stood by with a heaver in his hand, and said to the libellant, "If you attempt to strike the captain, I will knock you down directly," but the witness did not see him strike or make a blow with the heaver; that the libellant said to the master, whilst being flogged by him, "If you strike me again, I will let you have it"; and that the master made a motion to strike him again, and the libellant to go towards the master, as if for fight, when the mate seized him by the shoulders to prevent his advance upon the master, and tore his shirt.

The testimony of Jay thus stands contradicted by the answers of both of the respondents, and by the testimony of three witnesses, who had the same opportunity to see the affray that he had. Upon this proof, I must consider the charge against the mate, of having struck the libellant with a handspike, as entirely discredited and overthrown.

This court has too frequently recognised the principle, that no unnecessary severity or oppression, by officers towards seamen, will receive countenance here, to render it necessary now to enlarge upon the subject. Still less, will the court interfere with the prompt and efficient exercise, on the part of the officers, of every power necessary to enforce strict discipline and subordination on ship board. In the use of this power, occa-

sional excesses are no doubt committed. Men give way to transports of passion, or, forgetful of the rights of those under their authority, and of their own responsibility, gratify their resentment or pride of power by punishing without reason or commiseration. For occurrences of that character, this court will exercise, with an energy equal to the exigency, its corrective and remedial powers. It will punish the wrong and remunerate the injured, with a free and strong hand. The transaction at Gibraltar was, according to the decided preponderance of proof, no abuse of authority on the part of the master. The Agincourt, 1 Hagg. Adm. 271. The court will not attempt to adjust the degree of correction which the impertinence and contumacy of the libellant to the master's reproof deserved. Thorne v. White [Case No. 13,989]. There is no evidence that it was harsh in manner or excessive in degree, and both its continuance and its severity were justly provoked by the libellant, in threatening to knock the master down. After that open manifestation of insubordination, and of a disposition to commit violence upon the master, it was his duty to apply a correction of sufficient vigor to subdue the refractoriness or mutinous spirit of the libellant. No more than that appears to have been done, and both of the respondents are therefore acquitted of this charge.

The remaining charge is that of false imprisonment at Laguna. Neither the testimony nor the allegation in the libel connects the mate with that, so far as to render him liable to an action. It will not be necessary to consider how far one person may be made answerable for acts of violence committed by another at his instance or instigation. when he does not personally apply force or threats, inasmuch as, in this case, the instigation, if any, was from an inferior to a superior officer; and the suggestion of the mate merely led to an order or command from the master, to which the libellant quietly submitted, without the exercise of force or constraint. The subsequent detention of the libellant at Laguna, and not the act in which the mate participated, was the forcible restraint which constituted false imprisonment. so far as the case made by the pleadings and proofs affects the mate. But the mate could have had no power in the matter after the libellant left the vessel, and it must have depended solely upon the master, whether his confinement should be continued. or whether he should be received on board again. It seems to me, that this branch of the libel makes no case against the mate; and, without adverting to the answer and the proofs adduced in support of it, and which supply a full defence in this particular, I must pronounce. for a dismissal of the libel, in all its parts, as to the mate, with costs.

The next consideration is, how far the master is affected by this charge. The pleadings and the testimony of the different witnesses give a somewhat entangled statement of the circumstances leading to the taking of the libellant away from the vessel. It is difficult to discriminate the parts of this answer which the master gives upon his own knowledge. The answer is so drawn as to leave it somewhat indistinct, whether the relation of the transactions is exclusively that of the mate, or whether the master is also to be understood as concurring in the statement of what occurred after he returned on board with the soldiers. It does not appear whether the libellant manifested any spirit of insubordination in presence of the master. Jay asserts, that he and the libellant went peaceably and directly into the boat, and ashore, when ordered by the soldiers. The master is not alleged to have interfered at all, further than to bring the soldiers on board. Matthews says, that the master ordered the soldiers to take both the libellant and Jay ashore. Stewart says, that the master went for the guard on account of Jay; that, as he was shoving off from the vessel, the libellant called out to him, "If you take one, you will take both of us," meaning himself and Jay; that, when the soldiers came on board, the mate ordered the men up out of the forecastle, but both said they would not come for him, unless the soldiers came for them; and that the soldiers went below, and had difficulty in getting them out, but, at last, they both came up, and went directly into the boat; and, as they pushed from the vessel, took off their hats and gave three cheers. Clark says, that the libellant called out to the master, as he was going on shore, "If you take one, you will take both"; that, when the guard came on board, and took Jay, the libellant again made the same remark, and thereupon the guard took him also; and that it was his own notion, and he went ashore of his own accord. This witness says he did not hear the master tell the guard to take the libellant, and did not understand that the master intended to send him ashore.

Although the testimony of the witnesses seems to make the leaving the ship the voluntary act of the libellant, without any constraint on the part of the master, yet the answer puts it on a different footing. That assumes that he was sent on shore by the master, in consequence of his insubordinate and mutinous conduct,. either as witnessed by the master or as related to him by the mate. It must, accordingly, be considered, that the libellant was not merely permitted to go on shore with his comrade, but that he was forcibly sent out of the vessel, under arrest, and in charge of a guard of soldiers. The inquiry. then is, whether it was proper, for the support of discipline and subordination on board the ship, to resort to this measure. The answer of the mate cannot be read on the part of the master, and the matters therein set up by the mate solely, which might afford a justification, cannot be

regarded as in proof on this branch of the case. We must, accordingly, look to the individual answer of the master and to the proofs, to ascertain what justification he had for his proceedings. As before observed, the answer is rather indistinct in this particular; but, as it was the right of the libellant to compel the master to give an exact and specific answer to the matters charged in the libel, and, as he has acquiesced in that filed by the master as sufficient, the court will be disposed to give all reasonable effect to it, by a liberal construction of its terms. Under this principle, I shall consider every fact alleged to have occurred, where the master might have witnessed it, to be averred by him on his personal knowledge, equally with the mate. The broad allegation upon which the imprisonment is justified is, that the master, in consequence of the mutinous conduct of the libellant and Jay, deemed it necessary to remove them from the vessel, for his own safety and that of the crew. The acts which constituted that mutinous conduct, so far as the libellant was concerned, consisted of what the mate states, of his own knowledge, was done by the libellant whilst the master was gone for the soldiers, and his refusal, together with Jay, after the master returned, to come up out of the forecastle, when ordered to do so, until compelled by the soldiers. The master was on board at this last occurrence, and it is to be intended that it passed under his notice. Still, a single instance of a neglect to obey an order of this character, the purpose of which must have been well understood by the party, can hardly be deemed mutinous or culpably insubordinate. It was not a call to the ordinary duty of a sailor, but a command to place himself in the custody of soldiers, to be imprisoned in a foreign port and under foreign authority. Reluctance, or a refusal to yield willingly to such an order, does not, in my judgment, amount to mutinous conduct, or present a case where the master is justified, by the conduct or declarations of the man, in considering the vessel or crew in danger. Nor can the libellant's conduct, if he was disobedient and disorderly while undergoing punishment, be brought up in justification of the punishment itself. He was not put under arrest for refusing to come on deck, but he was ordered on deck for the sole purpose of being delivered over to the soldiers. Besides, it is very plainly inferable, from all the proofs put in, that the master did not proceed against the libellant so much on account of conduct in his own presence as upon the information and charge of his mate. He so stated unqualifiedly in his declaration before the consul, to obtain the detention of these men, and all the testimony he offers goes to show that nothing transpired before him demanding a punishment of the severity of that which was imposed. I am constrained, therefore, to say, that no facts are in proof, or even pleaded by the master, which exculpate him on this head of the complaint.

He forcibly removed the libellant from the vessel, and shows no adequate reason for so doing, and is, accordingly, answerable in damages in this action for that injury. The wrongful act also includes all consequences which directly flowed from or were dependent upon it. Such was the imprisonment of the libellant in the common jail of Laguna.

The master fails in proving any threats of personal injury to himself, or of a mutinous character which can excuse his leaving the libellant at Laguna. The evidence of the libellant's declarations is loose and unsatisfactory; and if, in terms of irritation and passion, he did use improper and menacing language respecting the master, it appears to have excited no alarm at the time, and the man continued on board and perfomed a long voyage, after the threats are supposed to have been made, without any exhibition of hostile or disorderly conduct. Neither is this cause for the detention of the libellant stated by the master in his deposition before the consul. He produces the evidence of a laborer, to prove that the libellant was in possession of a slung-shot on shore, which might have been used as a dangeous weapon, and also the deposition of Matthews, the cook, as to the libellant's threat on board; but he does not pretend, in his own deposition, that he ever regarded those circumstances as importing any danger to him or to the vessel. The general declaration of an apprehension of danger, subsequently made, and repeated in the consular certificate, is founded on the facts sworn to in the depositions of those witnesses, and not on any other particulars within the knowledge of the officers or crew of the vessel. It results, therefore, that the master improperly imprisoned the libellant, and also left him in confinement at a foreign port, without justifiable cause; and I decree damages against him, on account of these acts, in the sum of $100. Decree, $100, and costs.